Filed 7/14/14  In re S.B. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re S.B. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B254861 (Super. Ct. Nos. 1395455, 1395457) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>V.S.,<br><br>    Defendant and Appellant. | |

V.S. (mother) appeals orders of the juvenile court terminating her parental rights to S.B. and P.B., her children.  (Welf. & Inst. Code, § 366.26.)[1]  We conclude, among other things, that:  1) the trial court made express findings that the children were adoptable, and 2) substantial evidence supports those findings.  We affirm.

## FACTS

On June 29, 2011, the Santa Barbara County Child Welfare Services (CWS) filed a juvenile dependency petition (§ 300, subd. (b)) alleging there was a "substantial risk" that S.B., three years old, and P.B., an infant, would suffer "serious

---

[1] All statutory references are to the Welfare and Institutions Code.

physical harm" because of mother's "inability to supervise or protect" them. On June 12, 2011, mother "attempted suicide by overdosing on pain medication while caring for [P.B.]." She used methamphetamine on June 11, 2011, and the children were at risk because of her substance abuse. Her "criminal" history, which included using or being under the influence of a controlled substance, battery and assault, placed the children "at further risk of abuse and/or neglect."

In an addendum report, CWS recommended the children "be detained from their parents . . . and released to their mother . . . while she receives treatment at an inpatient substance abuse treatment program." The juvenile court ordered the children detained, but adopted the CWS recommendation that they be released to mother.

In an August 16, 2011, jurisdiction/disposition report, CWS recommended that the children remain in mother's care and custody and that she receive family maintenance services. The CWS case plan required her to participate in a variety of programs, including substance abuse treatment. On August 18, 2011, the trial court sustained the dependency petition and found the allegations to be true.

On September 1, 2011, CWS filed a second juvenile dependency petition. CWS said the children were taken into protective custody because mother tested positive for marijuana and her progress at the substance abuse treatment program was "minimal." In a September 13, 2011, jurisdiction/disposition report, CWS recommended that mother receive family reunification services, and that the children be "declared dependents" of the court and remain "in out of home care." On September 15, the trial court sustained the petition finding the allegations to be true. It found the children were dependents of the court and that "out-of-home placement is necessary."

In a March 15, 2012, status review report, CWS recommended that: 1) the children remain dependents of the court, 2) S.B. be returned to mother and mother receive family maintenance services for that child, and 3) mother receive "six more months" of family reunification services for P.B. The trial court adopted the CWS recommendations.

In September 2012, the trial court approved the CWS recommendation that P.B. reside with mother.

On July 17, 2013, CWS filed a juvenile dependency petition, alleging mother was unable to provide care or supervision of the children and she lacked "adequate parenting" skills. It alleged mother could not control the children's behavior, she yelled obscenities at P.B., and she could not provide shelter for them. CWS recommended that the children "be detained from the mother" and remain in an out-of-home placement. The court sustained the petition. It found the children could not remain safely with the parents and it adopted the CWS recommendations.

In an August 12, 2013, jurisdiction/disposition report, CWS noted that mother had received "approximately twenty-two months of services." It recommended that: 1) the children remain in out-of-home care, 2) no additional family reunification services be offered, and 3) "a Welfare and Institutions Code [section] 366.26 hearing . . . formalize a permanent plan for the children . . . ." The trial court adopted CWS's recommendations. It found the children's current out-of-home placement was "appropriate."

In a section 366.26 report, CWS recommended mother's parental rights be terminated and the trial court declare "adoption as the permanent plan" for the children. On January 30, 2014, the court terminated mother's parental rights and found the children were adoptable.

DISCUSSION

*Express Findings on Adoptability*

Mother contends the trial court erred by not making express findings that the children were adoptable. We disagree.

"'In order for the court to select and implement adoption as the permanent plan, it must find, by clear and convincing evidence, the minor will likely be adopted if parental rights are terminated.'" (*In re Brandon T.* (2008) 164 Cal.App.4th 1400, 1408.)

3

Mother notes that at the hearing the trial court said, "[T]he court will sign the 366.26 report and adopt the attachments, also." She claims there is no finding in the record that the children are adoptable. But in the court's written orders involving each child, it made the finding, "There is clear and convincing evidence that it is likely the child will be adopted." There was no error.

*Substantial Evidence*

Mother contends there is no substantial evidence to support those findings. We disagree.

"The issue of adoptability . . . focuses on the *minor*, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor." (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649.) "The question before the juvenile court [is] whether the child [is] likely to be adopted within a reasonable time, not whether any particular adoptive parents [are] suitable." (*In re Marina S.* (2005) 132 Cal.App.4th 158, 166.) "'[A] minor who ordinarily might be considered unadoptable due to age, poor physical health, physical disability, or emotional instability is nonetheless likely to be adopted because a prospective adoptive family has been identified as willing to adopt the child.'" (*In re Brandon T.*, *supra*, 164 Cal.App.4th at p. 1408.)

"We review an order terminating parental rights for substantial evidence." (*In re Brandon T.*, *supra*, 164 Cal.App.4th at p. 1408.) We must draw all reasonable inferences in support of the trial court's findings. (*In re Josue G.* (2003) 106 Cal.App.4th 725, 732.) We do not weigh the evidence or decide credibility issues.

Here there was sufficient evidence to support the findings on adoptability. In the section 366.26 report, CWS said the children "are considered to be generally adoptable." It noted they are "healthy, happy, and active" and are "meeting age appropriate developmental milestones." It said they "are placed in a loving and stable home where they are developing a strong bond and attachment to the prospective

4

adoptive parents." It said the "prospective adoptive parents are committed to the permanent plan of adoption . . . ." The evidence is sufficient.

The orders are affirmed.

NOT TO BE PUBLISHED.

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

5

Arthur A. Garcia, Rodney S. Melville, Judges

Superior Court County of Santa Barbara

_____


Frank H. Free, under appointment by the Court of Appeal, for Defendant and Appellant.


Michael C. Ghizzoni, County Counsel, Brian R. Pettit, Deputy, for Plaintiff and Respondent.